## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## EASTERN DIVISION

| | | |
|---|---|---|
| **DAVID LIBRACE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 2:18-cv-00031-JM-JTK** |
| | ) | |
| **WELLS FARGO BANK, N.A.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MOTION TO COMPEL ARBITRATION

Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") moves the Court to stay proceedings and to compel arbitration of the claims asserted against it by Plaintiff David Librace ("Librace" or "Plaintiff"), and states the following:

## I.
## INTRODUCTION

Plaintiff's claims against Wells Fargo are subject to arbitration because (1) there is a written arbitration agreement between Plaintiff and Wells Fargo; (2) Plaintiff, who resides in Arkansas, asserts claims relating to a safe deposit box at a Wells Fargo branch in Florida; and thus, the claims involve interstate commerce; and (3) the scope of the arbitration provision is extremely broad and encompasses the Plaintiff's claims in the Complaint.  All of the Plaintiff's claims are due to be arbitrated.

## II.
## FACTUAL BACKGROUND

1.      Plaintiff resides at 203 S. 7th, West Helena, Arkansas.  Beginning in

2012, Plaintiff leased a safe deposit box from the Wells Fargo bank branch located

at   17880   Collins   Avenue,   Sunny   Isles   Beach,   Florida,   33160.   *See*

Incident/Investigation Report, attached to the Complaint (Doc. 2, pp. 6-7).

2.      The gravamen of Plaintiff's Complaint is that he had jewelry, cash and

other items stolen from his safe deposit box.  Plaintiff alleges that Wells Fargo is

liable for purportedly failing to protect the property that he contends was stored in

his safe deposit box.  *See generally* Complaint (Doc. 2).

3.      The Lease Agreement between Plaintiff and Wells Fargo that governs

the safe deposit box contains an arbitration provision, which provides:

**Binding arbitration**

If you have a dispute with the Bank, and you are not able to resolve
the dispute informally, you and the Bank agree that upon demand by
either you or the Bank, the dispute will be resolved through the
arbitration process as set forth in this part.  A "dispute" is any
unresolved disagreement between you and the Bank.  It includes any
disagreement relating in any way to the Box or safe deposit services
described in these Lease Terms or the Lease Agreement, or to any
other services, accounts or matters; to your use of any of the Bank's
banking locations or facilities; or to any means you may use to access
your account(s) or the Box.  It includes claims based on broken
promises or contracts, torts, or other wrongful actions.  It also includes
statutory, common law, and equitable claims.

"Disputes include disagreements about the meaning, application or
enforceability of this arbitration agreement.   This arbitration
agreement shall survive any termination of your account(s).  **YOU**

**AGREE THAT YOU AND THE BANK ARE WAIVING THE RIGHT TO A JURY TRIAL OR TRIAL BEFORE A JUDGE IN A PUBLIC COURT.**

As the sole exception to this arbitration agreement, you and the Bank retain the right to pursue in small claims court any dispute that is within that court's jurisdiction.  If either you or the Bank fail to submit to binding arbitration following lawful demand, the party so failing bears all costs and expenses incurred by the other in compelling arbitration.

**Arbitration procedure; severability**

You or the Bank may submit a dispute to binding arbitration at any time, regardless of whether a lawsuit or other proceeding has been previously commenced.

**NEITHER YOU NOR THE BANK SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN A PRIVATE ATTORNEY GENERAL CAPACITY.**  Each arbitration, including the selection of the arbitrator(s) shall be administered by the American Arbitration Association (AAA, or such other administrator as you and the Bank may mutually agree to (the AAA or such other mutually agreeable administrator to be referred to hereinafter as the "Arbitration Administrator"), according to the Commercial Arbitration Rules and the Supplemental Procedures for Consumer Related Disputes ("AAA Rules").  To the extent that there is any variance between the AAA Rules and this Arbitration Agreement, this Arbitration Agreement shall control.  Arbitrators must be members of the state bar where the arbitration is held, with expertise in the substantive laws applicable to the subject matter of the dispute.  No arbitrator or other party to an arbitration proceeding may disclose the existence, content or results thereof, except for disclosures of information by a party required in the ordinary course of its business or by applicable law or regulation.  The parties agree that in this relationship:    (1) The parties are participating in transactions involving interstate commerce; (2) The arbitrator shall

decide any dispute regarding the enforceability of this arbitration agreement; and (3) This agreement and any resulting arbitration are governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code), and, to the extent any provision of the act is inapplicable, unenforceable or invalid, the laws of the state that govern the relationship between you and the Bank.  If any of the provision of this arbitration agreement dealing with class action, class arbitration, private attorney general action, other representative action, joinder, or consolidation is found to be illegal or unenforceable, that invalid provision shall not be severable and this entire arbitration agreement shall be unenforceable.

Ex. A, pp. 2-3.

4.    Plaintiff's claims arise from alleged wrongdoing by Wells Fargo associated with a Wells Fargo safe deposit box leased by Plaintiff.  Despite having the foregoing arbitration provision in <u>his</u> <u>possession</u>, Plaintiff filed suit in this Court.

## III.
## <u>ARGUMENT</u>

Federal law mandates that Plaintiff arbitrate his claims against Wells Fargo. Not only are arbitration agreements such as the one between the parties here presumptively valid, but the prerequisites established by § 2 of the Federal Arbitration Act ("FAA") for the enforcement of such agreements are satisfied. Wells Fargo's motion to compel arbitration of Plaintiff's claims is thus due to be granted.

### A.    Arbitration Agreements Are Presumptively Valid.

The FAA establishes that arbitration agreements "shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  Congress enacted the FAA to overcome long-standing judicial hostility toward pre-dispute arbitration agreements.  *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995).  With its enactment, Congress placed arbitration agreements "upon the same footing as other contracts." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)).

As such, "generalized attacks on arbitration," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991), based on the "suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants," *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 481 (1989), have been repudiated as "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." *Rodriguez de Quijas*, 490 U.S. at 481.  Instead, Congress, with its enactment of the FAA, and the Supreme Court, through its interpretation of the FAA, have together created a strong federal policy favoring the enforcement of arbitration agreements. These policies are so strong that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or

an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  It is against this backdrop of strong federal policy in favor of arbitration that the Court must evaluate the merits of Wells Fargo's motion.

### B.   The Prerequisites Established By The FAA For The Enforcement of Arbitration Agreements Are Clearly Satisfied In The Case At Hand.

In addition to their presumed validity, arbitration agreements are specifically enforceable under the FAA if the following prerequisites are met: (1) the existence of a written agreement to arbitrate claims; (2) a transaction involving interstate commerce; and (3) coverage of the claims by the arbitration clause.  9 U.S.C. § 2.  Each of these prerequisites is satisfied.

### 1.    The Parties' Arbitration Agreement Is In Writing.

It is undeniable that the parties' agreement to arbitrate is in writing.  *See* Ex. A. Thus, Wells Fargo has satisfied the FAA's first prerequisite for enforcement of an arbitration agreement.  *See*, *e.g.*, *Woodmen of the World Life Ins. Soc'y v. Johnson*, 23 F. Supp. 2d 1344, 1344 (S.D. Ala. 1998); *Ex Parte Foster*, 758 So. 2d 516, 519 (Ala. 1999); *American Bankers Ins. Co. of Florida v. Crawford*, 757 So. 2d 1125, 1128-30 (Ala. 1999); *Ex Parte Rager*, 712 So. 2d 333, 335 (Ala. 1998).

### 2.    The Parties' Transaction Involves Interstate Commerce.

According to most federal and state courts which have addressed the issue, the reference to "transactions involving commerce" in § 2 of the FAA indicates

what the United States Supreme Court has repeatedly recognized -- that, in enacting § 2, Congress was relying on its expansive powers under the Commerce Clause. *See Perry v. Thomas,* 482 U.S. 483, 491 & n.8 (1987); *Southland Corp. v. Keating,* 465 U.S. 1, 14-15 (1984); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 405 (1967).  In *Allied-Bruce Terminix Companies v. Dobson,* 513 U.S. 265, 274-75 (1995), the Supreme Court specifically held that the FAA embodies Congress' intent to provide for enforcement of arbitration agreements within the full reach of the Commerce Clause and that a narrow interpretation of "commerce" is inconsistent with the broad interpretation of the FAA, and would create a new, unfamiliar test that would unnecessarily complicate the law and breed litigation.  Therefore, the Supreme Court adopted a "commerce in fact" construction of the FAA, which merely requires that the transaction at issue must turn out, in fact, to have involved or affected interstate commerce. *Id.* at 281; *see also Perry v. Thomas,* 482 U.S. 483, 490 (1987) (holding that "the Federal Arbitration Act . . . embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause"); *Fry v. United States*, 421 U.S. 542, 547, *cert. denied*, 421 U.S. 1014 (1975) ("Even activity that is purely intrastate in character may be regulated by Congress, where the activity, combined with like conduct by others similarly situated, affects commerce among the states....").

Given this broad interpretation, it is hardly surprising that Courts addressing Arkansas law have held that banking claims involve interstate commerce. *See Johnson v. Bank of Bentonville*, 269 F.3d 894, 896 (8th Cir. 2001) (lending activities of Arkansas bank affected interstate commerce); *Danner v. MBNA Am. Bank, N.A.*, 255 S.W. 3d 863, 866 (Ark. 2007) (dispute between credit card company and accountholder involved interstate commerce); *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 58 (2003) ("There is no question that it is within Congress's authority to regulate the banking industry, as that industry is a key component of 'commerce'".). Furthermore, <u>where parties agree that their transaction involves interstate commerce, that agreement "is, in effect, a stipulation that removes the requirement for proof of connections with interstate commerce</u>." *Pest Mgmt., Inc. v. Langer*, 240 S.W. 3d 149, 154 (Ark. Ct. App. 2006) (emphasis added).

The parties' dealings fall squarely within the scope of this authority. Wells Fargo is a national banking association that is heavily regulated by the Congress of the United States. The relationship between Plaintiff and Wells Fargo at all times involved and affected interstate commerce. As just a few examples, Plaintiff sent correspondence from his address in Arkansas to the Wells Fargo branch in Florida (*see, e.g.*, Ex. B); Wells Fargo sent correspondence from Charlotte, North Carolina to Plaintiff at his address in Arkansas (*see, e.g.*, Ex. C); and, Plaintiff drove from

Arkansas to Florida (and consequently, through no less than two other states) to access the safe deposit box on the date he discovered that items were allegedly missing.  Plaintiff even agreed pursuant to the terms of the Lease Agreement that through his relationship with Wells Fargo:  "[t]he parties are participating in transactions involving interstate commerce…" (Ex. A, p. 3); thereby removing the requirement for proof of connections with interstate commerce.  *Pest Mgmt., Inc.* 240 S.W. 3d at 154.

In light of the foregoing, there can be no doubt that interstate commerce is "involved" or "affected" by the relationship of the parties.  Thus, the second prerequisite for enforcement of the parties' arbitration agreement is satisfied.

### 3.   Plaintiff's Claims Are Covered By The Broad Arbitration Provision In The Lease Agreement.

The final inquiry under § 2 of the FAA is whether the claims asserted fall within the scope of the parties' arbitration agreement.  In the present action, the parties' arbitration agreement is broad enough to encompass all of the Plaintiff's claims against Wells Fargo.  The Lease Agreement contains extremely broad language defining the scope of arbitrability:

> If you have a dispute with the Bank, and you are not able to resolve the dispute informally, you and the Bank agree that upon demand by either you or the Bank, the dispute will be resolved through the arbitration process as set forth in this part.  A "dispute" is any unresolved disagreement between you and the Bank.  It includes any disagreement relating in any way to the Box or safe deposit services described in these Lease Terms or the Lease Agreement, or to any

other services, accounts or matters; to your use of any of the Bank's banking locations or facilities; or to any means you may use to access your account(s) or the Box.  It includes claims based on broken promises or contracts, torts, or other wrongful actions.  It also includes statutory, common law, and equitable claims.

"Disputes include disagreements about the meaning, application or enforceability of this arbitration agreement.  This arbitration agreement shall survive any termination of your account(s).  **YOU AGREE THAT YOU AND THE BANK ARE WAIVING THE RIGHT TO A JURY TRIAL OR TRIAL BEFORE A JUDGE IN A PUBLIC COURT.**

As the sole exception to this arbitration agreement, you and the Bank retain the right to pursue in small claims court any dispute that is within that court's jurisdiction.  If either you or the Bank fail to submit to binding arbitration following lawful demand, the party so failing bears all costs and expenses incurred by the other in compelling arbitration.

Ex. A, p. 2.  Plaintiff's claims, all of which arise from Wells Fargo's alleged failure to meet certain obligations to Plaintiff relating to the safe deposit box and/or services which Wells Fargo was purportedly responsible for providing relating to the box's protection, plainly fall within the scope of the arbitration agreement.

When determining the scope of an arbitration provision, the Court must look to the factual allegations of the complaint and determine whether the claims alleged therein touch and concern matters covered by the arbitration provision.  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985); *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 386-87 (11th Cir. 1996); *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 45 (2d Cir. 1993); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840,

846 (2d Cir. 1987); *Costle v. Freemont Indem. Co.*, 839 F. Supp. 265 (D. Vt. 1993).  In doing so, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989) (citations omitted).  Moreover, the presumption of arbitrability, created by the mere existence of an arbitration clause, can only be overcome if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage." *AT&T Tech., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).  Thus, "in order to exclude a claim from arbitration, there must be an express provision within the original contract between the parties that excludes a particular grievance."  *See, e.g.*, *H.L. Fuller Const. Co. v. Industrial Dev. Bd. of Vincent*, 590 So. 2d 218, 221 (Ala. 1991).

In construing arbitration clauses, courts have also distinguished between "broad" clauses that purport to subject to arbitration all disputes arising out of or relating to a contract, and "narrow" clauses that limit arbitration to specific types of disputes. *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988).  If a court concludes that the arbitration provision

before it is a "broad" one, then the federal presumption in favor of arbitrability applies with even greater force. *AT&T*, 475 U.S. at 650. With that said, both the Supreme Court of the United States and the Arkansas Supreme Court have recognized "broad" arbitration clauses and construed them in accordance with their express language. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) ("Any controversy or claim arising out of or relating to this Agreement, or breach thereof, shall be settled by arbitration in the City of New York, in accordance with the rules then obtaining of the American Arbitration Association"); *BDO Seidman, LLP v. SSW Holding Co., Inc.*, 386 S.W. 3d 361, 368 (Ark. 2012) ("When an arbitration clause is broad and there is a dispute as to whether a matter is arbitrable, all reasonable doubt should be resolved in favor of arbitration.").

Here, the language of the Lease Agreement is more than broad enough in scope to encompass Plaintiff's claims against Wells Fargo. Specifically, the language of the Lease Agreement encompasses all disputes with Wells Fargo, including "any disagreement relating in any way to the Box or safe deposit services described in….the Lease Agreement, or to any other services, accounts, or matters…or to any means [Plaintiff] may use to access….the Box.". Ex. A, p. 2.[1]

---

[1] The "sole exception" is for a claim within the jurisdiction of "small claims court". *Id*. This case does not meet that exception.

It is hard to imagine how an arbitration provision could possibly be broader. Plaintiff certainly cannot show "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T*, 475 U.S. at 650. The third and final prerequisite for enforcement of an arbitration agreement under the FAA is satisfied, and Wells Fargo's motion to compel Plaintiff's claims to arbitration is therefore due to be granted.[2]

### C. The FAA Mandates A Stay Of All Proceedings In The Case At Hand Because A Valid And Enforceable Arbitration Agreement Exists Between The Parties.

This Court should compel Plaintiff's claims to arbitration and should also stay all proceedings in this matter. A stay is proper in this action under § 3 of the FAA, which provides for a stay of litigation where issues are referable to arbitration:

---

[2] Wells Fargo notes that the arbitration provision at issue was discovered by undersigned counsel when the Lease Agreement was produced by Plaintiff, who ostensibly has had the document in his possession since the outset of the case (or prior to that time). The Plaintiff made his document production on the evening of Thursday, June 21. Wells Fargo is filing the instant motion to compel arbitration merely one week later. To the extent the Court is concerned over whether Wells Fargo has 'substantially invoked litigation' and thus waived its right to arbitration, it need not be. Indeed, as the Eighth Circuit has held, where no issues have been litigated and "the limited discovery conducted will be usable in arbitration," no prejudice results to the opposing party and therefore no waiver has occurred. *Stifel, Nicolaus & Co., Inc. v. Freeman*, 924 F.2d 157, 159 (8th Cir. 1991). And moreover, "[b]ecause of the strong federal policy in favor of arbitration, any doubts concerning waiver of arbitrability should be resolved in favor of arbitration." *Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016).

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, provided the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

In enacting § 3, Congress deliberately chose not to utilize precatory language giving trial courts discretion in deciding whether a stay should issue. Instead, the stay provisions found in § 3 of the FAA are mandatory. Where "the issues in a case are within the reach of the agreement, the trial court has no discretion under Section 3 to deny the stay." *Midwest Mechanical Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986) (emphasis added); *see also McMahan Sec. Co. v. Forum Capital Mkts., L.P.*, 35 F.3d 82, 86 (2d Cir. 1994); *Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826, 830 (D.C. Cir. 1987). As such, if this Court properly enters an order compelling arbitration, then it must also stay all proceedings.

## IV.
## <u>REQUESTED RELIEF</u>

**WHEREFORE**, Defendant Wells Fargo Bank, N..A. respectfully requests that the Court enter an appropriate order compelling arbitration of Plaintiff's claims against Wells Fargo, and staying proceedings.

Respectfully submitted,

*s/ Kip A. Nesmith*
Kip A. Nesmith
Admitted Pro Hac Vice
AL Bar #ASB-9794-I70N
Megan P. Stephens
AR Bar #2010087
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
knesmith@burr.com
mstephens@burr.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing document by U.S. Certified Mail on this the 29th day of June, 2018:

David Librace
203 S. 7th
West Helena, Arkansas  72390

*s/ Kip A. Nesmith*
OF COUNSEL